**BUNCH v. THOMAS et al.   (No. 11508.)**

(Court of Civil Appeals of Texas.   Fort Worth.
Nov. 27, 1926.)

1. **Waters and water courses ⬳118—Remedy for damage by diversion of water is implied from statute (Rev. St. 1925, art. 7589).**

Though Acts 1917, c. 88, § 80 (Rev. St. 1925, art. 7589), prohibiting diversion of water to prejudice of any person, does not give injured party remedy including damages, such consequences must be implied.

2. **Waters and water courses ⬳118—Owner, to protect land, cannot divert surface waters by construction of embankment damaging adjoining owner (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t; Rev. St. 1925, art. 7589).**

Under Acts 1st Called Sess. 1915, c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), and Acts 1917, c. 88, § 80 (Rev. St. 1925, art. 7589), owner of land is forbidden to protect his own land from damage by construction of dikes or embankments diverting surface waters so as to damage adjoining landowner.

3. **Waters and water courses ⬳118—Embankment constructed before prohibitory law cannot be abated or damages recovered for diversion of water (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t).**

Embankment by owner of land, existing and maintained prior to Acts 1st Called Sess. 1915, c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), was lawful, and cannot be made ground for action to abate or for damages from diversion of waters.

4. **Waters and water courses ⬳118—Damages caused by enlargement of embankment impounding water after enactment of prohibitory law may be recovered (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t; Rev. St. 1925, art. 7589).**

Under Acts 1st Called Sess. 1915, c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), and Acts 1917, c. 88, § 80 (Rev. St. 1925, art. 7589), landowner may recover damages caused by adjoining owner extending and enlarging embankment on land so as to increase volume of impounded water after enactment of statutes prohibiting such act.

5. **Judgment ⬳585(5)—Judgment denying recovery for diversion of water is not res judicata of entire cause of action for damages by enlargement of embankment after statute prohibiting same (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t; Rev. St. 1925, art. 7589).**

Judgment in prior action denying recovery for injuries from diversion of water involving same land was conclusive that embankment then existing did not cause damage, but is not res judicata as to entire cause of action for damages caused by enlargement of embankment after enactment of Acts 1st Called Sess. 1915, c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t, and Acts 1917, c. 88, § 80 (Rev. St. 1925, art. 7589), prohibiting diversion of water.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by A. H. Bunch against Mrs. M. E. Thomas and others, submitted on agreed statement of facts under Vernon's Sayles' Ann. Civ. St. 1914, art. 1949 (Rev. St. 1925, art. 2177).   Judgment for defendants and plaintiff appeals.   Reversed and remanded with directions.

Grindstaff & Zellers, of Weatherford, for appellant.

Preston Martin and Hood & Shadle, all of Weatherford, for appellees.

CONNER, C. J.   Appellant, A. H. Bunch, is the owner of 318 acres of land situated in Parker county.   Mrs. M. E. Thomas and Lewis Thomas are the owners of a tract lying immediately south of appellant's land.   In this action appellant sought to enjoin appellees from the construction of an embankment or dike on the north line of their tract of land, appellant alleging that in so doing the natural course of the surface water was obstructed and thereby caused to overflow some 45 acres of his land, to his damage, etc.   Appellant alleged that there was a public road about 40 feet in width running between the lands of the parties named; that prior to the 26th day of August, 1915, the defendants had constructed and were maintaining a levy or embankment on and along their said north line for a distance of about 250 feet; that said embankment was a very small one, ranging from about one foot to 18 inches in height at its crest and extending in length some 250 feet with an elevation of about 2 inches at the extremities of the embankment; that appellant's land gradually sloped to the south, and surface waters in their natural flow passed from his land onto the land of appellees and to a stream below; that said embankment so obstructed the water as to impound it on appellant's land and cover some 5 or 6 acres thereof.

Appellant further alleged that he had purchased the lands in November, 1918, after which defendants began repairing and building higher and wider and making more substantial the original embankment and ditch along the north line of their property, and continued such enlargement during the years of 1921, 1922, and 1923, so that the embankment extended a further distance of 100 feet, and made it from 2 to 4 feet higher, thus diverting the natural flow of the surface water and causing the same to impound and cover with water some 40 acres of plaintiff's land, to his damage in the aggregate of $800, and he prayed that the embankment complained of might be abated, defendants enjoined from constructing other or further embankments, and for a recovery of damages.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendants answered by demurrers to the plaintiff's petition, interposed a general denial, and specially pleaded that the construction of the ditch and dam complained of was necessary in order to protect their lands from overflow and a deposit of Johnson grass, and had been constructed and maintained for more than 20 years, of which the plaintiff had full notice and knowledge at the time of and subsequent to the purchase of his lands; and by a supplemental answer further pleaded that for more than 20 years before the institution of the suit the public road between the plaintiff's and defendants' land had become elevated and filled in by the natural washing from higher lands; that said fill is some two feet higher than when the road was first established, and that there has existed a depression on plaintiff's land where surface water has stood at different times for the length of time "whereof the memory of man runneth not the contrary"; and that said natural depression on plaintiff's land, during rains, becomes overflowed as a result of the earth deposits and ditches mentioned.

Defendants further pleaded that the ditches and dam complained of had been constructed under the orders of the commissioners' court and used and maintained substantially in the form existing for more than 10 years, which was pleaded in bar of plaintiff's action. Defendants further pleaded to the effect that in 1905, in a suit numbered 4080, by H. H. Hubbard, from whom the plaintiff purchased his lands, and against appellees and another, said Hubbard, for cause of action, complained of the construction of the dam and embankment now objected to substantially as plaintiff now complains, and that a final judgment was therein rendered in favor of appellees against Hubbard denying all relief—this judgment also being pleaded in bar of the present action.

The case was submitted to the court upon an agreed statement of facts, as permitted by article 1949, Vernon's Sayles' Ann. Civ. St. 1914 (article 2177, Rev. Statutes 1925). The agreed statement shows that on the trial of cause No. 4080, instituted by H. H. Hubbard against appellees and another prior to 1905, "evidence was introduced pro and con on the issue as to whether or not the natural flow of water from and off of the land of the said H. H. Hubbard, plaintiff therein, was onto and across the land of the defendants therein, * * * and it is further agreed that the defendants in this suit, Mrs. M. E. Thomas and Lewis Thomas, are the owners of the lands then owned by the defendants" in said cause No. 4080; that "the plaintiff in this suit, A. H. Bunch, is the owner, by regular chain of title, of the same land then owned by the said H. H. Hubbard; and it is further agreed that said judgment rendered in cause No. 4080 was never recorded in the office of the county clerk of Parker county, Tex.; and

that said judgment in cause No. 4080 was rendered in the district court of Parker county, Tex., on the 13th day of June A. D. 1905."

The agreed statement further shows that the judgment referred to in cause No. 4080 became final and no appeal was taken therefrom; that the plaintiff, Bunch, purchased his lands from Hubbard on November 20, 1918, but at that time had no actual notice of the existence of said judgment.

Upon the trial the plaintiff, Bunch, offered to prove, and could have proven, the agreed statement says, by the witness H. H. Hubbard, who is a man of about 70 years of age, that he had resided in the vicinity in which the land is located for a period of 35 years; that he was well acquainted with the lay of the land and the direction in which the natural flow of the surface water escaped from plaintiff's land, and had been so acquainted with the situation for a period of 35 years; that he had been the owner of said land now belonging to the plaintiff and had worked and cultivated the same and knew the natural flow of the surface water off of the lands of the plaintiff, and would have further testified to the material allegations of fact in the plaintiff's petition.

The defendants objected to such evidence on the ground that the former judgment in cause No. 4080 precluded any inquiries as to the matters offered to be proven, and that said judgment was final and conclusive of the issues raised by the testimony offered, and was final and conclusive with reference to the direction of the natural flow of the surface water and the natural drainage thereof, and conclusive that the natural flow of said water was not off of plaintiff, Bunch's, land and onto the land of the defendants.

The court sustained the objections of defendants, and held "by reason of said judgment in cause No. 4080 that the plaintiff was precluded from proving the above facts by said witness, and to which said ruling of the court the plaintiff then and there duly excepted, and then and there perpetuated in due form of law his bills of exception to the action and ruling of the court in refusing to permit him to prove said facts by said witnesses."

In this connection it was further agreed that:

"After the 29th day of August, 1915, and after plaintiff purchased said land, the defendants increased the size of and the height of said dam and embankment and extended the east line of the same so that it further diverts the surface water and further prevents same from flowing on and across defendants' lands and cause the impounding of water on and overflow of additional acreage of plaintiff's land, thereby damaging him; that said embankment, dam, and levee is now being maintained by the said defendants in its increased heightened and extended form."

Upon the agreed statements so indicated and quoted, the court rendered judgment for the defendants, holding that the judgment in cause No. 4080 "was res judicata" of the issues herein involved, to all of which the plaintiff then and there in open court in due and proper form excepted and gave notice of appeal to this court.

Prior to the act of May 29, 1915, we had no statutory provision relating to the subject. That act, however, contains the following provision to be found in Vernon's Texas Statutes, 1918 Supplement, art. 5011t, which reads as follows:

"That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby, provided that the passage of this act shall in no way affect the construction and maintenance of levees and other improvements for the purpose of controlling floods, overflows and freshets in rivers, creeks and streams, nor the construction of canals for the purpose of conveying waters for irrigation; and provided further that nothing in this act shall be so construed as to authorize or give authority to persons or corporations owning or constructing canals for irrigation or other purposes, to construct or maintain any canal, lateral canal or ditch in such manner as to obstruct any river, creek, bayou, gully, slough, ditch or other well defined natural drainage."

There was a revision of our irrigation laws, however, by an act of the Legislature, approved March 19, 1917. Section 80 of that act (Acts 1917, c. 88), which appears in the Revised Statutes of 1925 as article 7589, reads as follows:

"It shall be unlawful for any person, association of persons, corporation, water improvement or irrigation district to take or divert any of the water of the ordinary flow, underflow, or storm flow of any stream, water course, or watershed, in this state into any other natural stream, water course or watershed, to the prejudice of any person or property situated within the watershed from which such water is proposed to be taken or diverted."

[1-3] While the act of 1917 does not in express terms provide that in case of a violation of the section quoted from the act an injured party "shall have remedies in both law and equity, including damages occasioned thereby," such consequences, we think, must be implied. It has been held by the Galveston Court of Civil Appeals in the case of Gaertner v. Stolle, 238 S. W. 252, writ re- fused, that prior to the act of 1915 there was no law operative in this state which forbid the owner of land to protect his own land from damage by the construction of dikes or embankments thereon diverting surface waters. Such also was the holding of the Court of Civil Appeals at Austin in the case of North Texas Compress & Warehouse Co. v. Howard, 267 S. W. 1026. But it is clear that since the enactments referred to a landowner may not do so and thus damage an adjoining landowner. See, in addition to the cases already cited, Hogins v. Wilson, by the Amarillo Court of Civil Appeals, 262 S. W. 776; Wilkerson v. Garrett (Tex. Civ. App.) 229 S. W. 666; Anderson v. Highland Lake Co. (Tex. Civ. App.) 258 S. W. 218. It follows that the embankment complained of, in so far as it existed and was maintained prior to the act of 1915, was lawful and cannot be made a ground for an action to abate or for damages.

[4] Appellant alleged, however, and sought to prove, that since the enactment of 1915 the defendants below, appellees here, had extended and enlarged, and were continuing to extend and enlarge, the embankment or levee upon their land so as to greatly increase the volume of impounded water on his premises. For damage, if any, so brought about and not barred by limitation, appellant will have under the authorities already cited a clear right of recovery. We have not and will not undertake to determine to what extent appellant's damages, if any, have been barred by limitation, or what part, if any, the embankment in controversy may be abated, inasmuch as the evidence material to a proper determination of these questions has not been developed nor have these questions been briefed by the parties. But as relating generally to the subjects mentioned, it may be helpful to refer to 25 Cyc. pp. 1142–1145; Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S. W. 1, L. R. A. 1916E, 960; Rainey v. Railway Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580; and the Massachusetts case of Wells v. New Haven & Northhampton Co., 151 Mass. 46, 23 N. E. 724, 21 Am. St. Rep. 423.

[5] The theory upon which the case seems to have been tried below was that the judgment in case No. 4080, pleaded by appellees, was conclusive upon the issue of whether the natural course of flood waters from the plaintiff's land was over and across that of the defendants, and hence conclusive on all issues. At least the record expressly shows that appellant sought to prove that the natural course of the flood waters was obstructed and that this caused the injuries of which he complained, and the evidence tendered on this issue was excluded. In such ruling, however, we think there was error. The judgment, indeed, was conclusive upon the fact of its ren-

dition and upon the fact that the embankment, as then existing, did not cause an overflow on or damage to the adjoining land on the north, but its conclusive effect did not extend beyond this. The judgment may have been predicated upon proof that the defendants in that suit had a common-law right to erect the dam, or it may be the finding was that it was insufficient to cause back water upon the adjoining land. In other words, the judgment does not appear to have been necessarily dependent upon the fact that the natural course of the storm waters was obstructed and impeded. Mr. Black, in his work on Judgments, vol. 2, § 615, declares:

"A judgment is conclusive by way of estoppel only as to facts without the existence and proof or admission of which it could not have been rendered. In other words, it is conclusive evidence of whatever it was necessary for the jury to have found in order to warrant the verdict in the former action, and no further."

See, also, Blue Book on Evidence, vol. 3, § 597, where the author says:

"It is another limitation upon the general doctrine that judgments are conclusive in subsequent actions between the same parties that the issue in the second motion must have been a material and necessary issue in the first action, and determined therein. In other words, a judgment is conclusive, either as a plea in bar or as evidence only as to facts directly and distinctly put in issue; and the doctrine of estoppel is limited to those facts. It does not extend to facts which may be in controversy, but which rest in evidence and are merely collateral. Neither does it extend to facts raised incidentally or by immaterial issues, or which are to be inferred by argument from the judgment."

Appellant's right of action to prevent continued enlargement of the dam and to abate all such parts thereof as has not become vested in appellees, under the common law or by prescription, is founded on the statutes quoted which confer rights and remedies not existing in this state prior to the taking effect of act of May 29, 1915. It follows that appellant's cause of action, in part at least, is new and distinct from that presented in cause No. 4080, and dependent on different laws and materially different issues.

We conclude that for the reasons stated and under the authorities cited, the judgment below should be reversed and the cause remanded for further proceedings not inconsistent with the law or with this opinion.